UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-14197-Cannon/McCabe

NELSON HENRY,

     Plaintiff,

v.

JOSEPH IANNONE, et al.,

     Defendant.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion"), which was referred to the undersigned by United States District Judge Aileen M. Cannon.  (DE 41, DE 54).  For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion be **GRANTED IN PART** and **DENIED IN PART.**

## I.    BACKGROUND

This is a pro se civil rights case arising from a DUI arrest.  By previous Order, the District Judge found the initial complaint to be an impermissible shotgun pleading and dismissed it without prejudice.  (DE 5).  Plaintiff thereafter filed an Amended Complaint (DE 7), followed by a Second Amended Complaint ("SAC"), alleging claims against four defendants:  (1) Officer Joseph Iannone, (2) Officer James Deacetis, (3) the City of Port St. Lucie ("City"), and (4) Jesus Merejo, the City Manager of the City ("City Manager").  (DE 39 at 1-2).  The SAC alleges the following facts.

On January 17, 2021, Plaintiff was driving on Veterans Memorial Parkway when he became tired and decided to pull over onto the grass shoulder of the road so he could sleep. (DE 39 ¶¶ 7, 65). Plaintiff believed he could park on the grass shoulder and sleep in his car because there were no visible signs indicating he could not do so. (DE 39 ¶¶ 7-8). At some point, Officer Iannone knocked on Plaintiff's car window and made contact with him. (DE 39 ¶ 15). Shortly thereafter, Officer Deacetis responded to the scene as backup. (DE 39 ¶ 20).

Plaintiff told the officers he had been at a friend's performance earlier that evening and had just come from Rivergate Plaza. (DE 39 ¶ 17). Plaintiff said he pulled over because he felt tired while driving as he was caring for a newborn baby at home, he had worked several consecutive fourteen-hour shifts, and he had already made a long drive from Palm Beach to St. Lucie County earlier that day. (DE 39 ¶ 17).

At some point during the encounter, Officer Iannone asked Plaintiff how much he had to drink, and Plaintiff responded "one." (DE 39 ¶ 33). Officer Iannone did not clarify whether Plaintiff's one drink contained alcohol. (DE 39 ¶ 33). Neither officer requested that Plaintiff perform a breath, blood, or urine test to measure the alcohol in Plaintiff's system. (DE 39 ¶ 27). Throughout the encounter, Plaintiff was cooperative with police and his speech was not slurred. (DE 39 ¶ 34).

Officer Iannone next asked Plaintiff to get out of his car and participate in a roadside field sobriety test. (DE 39 ¶ 22). Plaintiff agreed to participate. (DE 39 ¶ 22). Officer Iannone asked if Plaintiff had any injuries that would prevent him from performing the test. (DE 39 ¶ 32). Plaintiff responded that he had an ankle injury and his brace was in the car. (DE 39 ¶ 32). Officer Iannone asked if Plaintiff believed he could still perform the test. (DE 39 ¶ 32). Plaintiff responded

that he would try to perform the test without the brace.  (DE 39 ¶ 32).  At the conclusion of the test, Officers Deacetis and Iannone placed Plaintiff under arrest for DUI.  (DE 39 ¶ 22).

Plaintiff contends that the arrest affidavit (not attached to the SAC) contained the following false information:

- Officer Iannone observed Plaintiff's car stopped at a traffic signal facing the wrong direction, with Plaintiff sleeping in the driver's seat.  (DE 39 ¶¶ 10, 14).

- Plaintiff admitted to having one alcoholic drink.  (DE 39 ¶¶ 18-19).

- Officer Iannone observed an odor of alcohol on Plaintiff and noted that Plaintiff's eyes were bloodshot, watery, and droopy.  (DE 39 ¶ 20).

- Plaintiff refused a breath, blood, or urine test.  (DE 39 ¶ 27).

- Officer Iannone observed "Mr. Reis" stumbling, believed "they" were under the influence, requested a test of "their" breath, and thereafter placed "Mr. Grant" under arrest.  (DE 39 ¶¶ 65-70).

Plaintiff claims that many of these false statements will be easily refuted by a roadside video provided by Defendants.  (DE 39 ¶¶ 31, 33-34, 58).  Plaintiff also contends that Officer Iannone tampered with evidence by blurring Plaintiff's face from the roadside video, thus making it impossible to determine whether Plaintiff's eyes were bloodshot, watery, and/or droopy.  (DE 39 ¶ 34).

After his arrest, the state charged Plaintiff with DUI and arraigned him on February 16, 2021.  (DE 39 ¶¶ 29, 37, 75).  Plaintiff remained in jail for over twelve months in connection with these charges.  (DE 39 ¶¶ 38, 93-97).  Ultimately, state prosecutors dismissed the DUI case against Plaintiff on or around June 1, 2022, thereby terminating the proceeding in his favor.  (DE 39 ¶¶

3

37-47, 78).

Based on the above, the SAC identifies the following causes of action:

| Count | Claim | Defendants |
|-------|-------|------------|
| 1 | Illegal search and seizure in violation of 42 U.S.C. § 1983 | Officers Iannone & Deacetis |
| 2 | Common law malicious prosecution | Officers Iannone & Deacetis |
| 3 | False arrest | All Defendants |
| 4 | False imprisonment | The City Manager & the City |
| 5 | Outrageous conduct causing severe emotion distress | Officers Iannone & Deacetis |

(DE 39).

## II.    LEGAL STANDARD

By way of this Motion, Defendants seek dismissal of the SAC pursuant to Fed. R. Civ. P.

12(b)(6).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court

must accept a plaintiff's allegations as true and construe them in the light most favorable to the

plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Although Rule 8(a)(2)

requires only "a short and plain statement of the claim showing that the pleader is entitled to relief,"

a mere "formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007).  Instead, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.*

4

III.    **DISCUSSION**

Defendants urge dismissal of all five counts.  The Court will address each count in turn.[1]

A.      **Count 1 – 42 U.S.C. § 1983**

Count 1 alleges claims against Officers Iannone and Deacetis for violation of 42 U.S.C. § 1983, which provides a remedy against "every person" who, under color of state law, deprives another of rights secured by the Constitution and laws of the United States.  In this case, Plaintiff alleges that Officers Iannone and Deacetis violated his constitutional rights by, among other things, falsely arresting him and causing his malicious prosecution.  (DE 39 ¶¶ 55-83).  Defendants urge dismissal of this count based on the doctrine of qualified immunity.  (DE 41 at 8-12).  As set forth below, the Court agrees that a portion of Count 1 should be dismissed.

The doctrine of qualified immunity provides "complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (cleaned up).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (cleaned up). The defense of qualified immunity may be raised and considered on a motion to dismiss. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

---

[1]  In addition to the arguments addressed below, Defendants also urge the Court to dismiss the SAC as a "shotgun pleading."  (DE 41 at 23-25).  The Court rejects this argument and finds that the SAC adequately puts Defendants on "notice of the claims against them and the grounds upon which each claim rests."  *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294–95 (11th Cir. 2018).

To be eligible for qualified immunity, a defendant must first establish that he or she was performing a "discretionary function" at the time the alleged violation of federal law occurred. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004).  Here, the SAC alleges that Officers Iannone and Deacetis arrested Plaintiff for DUI, thereby causing his prosecution for DUI.  The Court finds these allegations sufficient to show "discretionary functions" for purposes of qualified immunity analysis.

Once the defendant makes this showing, the burden shifts to the plaintiff to demonstrate that the defendant is not entitled to qualified immunity.  *Id.* at 1264.  To meet this burden, the plaintiff must satisfy a two-step test: (1) he must show the defendant committed a constitutional violation, and (2) he must show the constitutional right at issue was "clearly established" at the time of the violation.  *Id.*  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hamilton v. City of Jackson, Ala.*, 261 F. App'x 182, 186 (11th Cir. 2008) (cleaned up).  "Put another way, the defendant must have fair notice of his conduct's unconstitutionality which derives from one of the following sources: (1) the obvious clarity of constitutional or statutory language; (2) of principle in case law that are not tied to particularized facts; or (3) fact-specific judicial precedents that are not fairly distinguishable." *Eloy v. Guillot*, 289 F. App'x 339, 346 (11th Cir. 2008).

In this case, Count 1 alleges that Officers Iannone and Deacetis violated Plaintiff's constitutional rights by (1) approaching his parked vehicle without probable cause, (2) falsely arresting him for DUI without probable cause, and (3) causing his malicious prosecution.  (DE 39 ¶¶ 55-74, 75-83).  The Court will address each allegation in turn.

6

### 1.    Welfare Check on Vehicle

Plaintiff first alleges that Officer Iannone violated his constitutional rights merely by approaching his parked vehicle on the grass shoulder of the road.  (DE 39 ¶¶ 7-8, 15, 58, 71, 73). The Court finds no constitutional violation in such activity, as police officers who patrol the public roads are often called to discharge noncriminal "community caretaking functions," such as responding to disabled vehicles or investigating accidents.  *Cady v. Dombrowski*, 413 U.S. 441 (1973).  Indeed, "[a] police officer needs no level of suspicion to approach an individual in public to put questions to him."  *United States v. Jasper*, No. CR419-191, 2020 WL 1862243, at *2 n.4 (S.D. Ga. Mar. 2, 2020), *R. & R. adopted*, 2020 WL 1848054 (S.D. Ga. Apr. 13, 2020); *see, e.g.*, *Muhler v. Mena*, 544 U.S. 93, 101 (2005) ("We have held repeatedly that mere police questioning does not constitute a seizure" and "even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual….") (cleaned up).

Even when viewing this allegation in the light most favorable to Plaintiff, therefore, the Court finds no plausible violation of any constitutional right, let alone any "clearly established" violations.  *See Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1285–86 (11th Cir. 2000) ("If a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a clearly established right.").  The Motion should be granted as to this portion of Count 1.

### 2.    False Arrest

Count 1 next alleges that Officers Iannone and Deacetis violated Plaintiff's Fourth Amendment rights by falsely arresting him for DUI without probable cause.  (DE 39 ¶¶ 59-74). Specifically, Plaintiff alleges he had not been drinking alcohol on the night of the arrest, that his

appearance and speech were normal, and that the arresting officers never offered him a breath test

(or any other alcohol-confirming test).  (DE 39 ¶¶ 17, 27, 33-34, 61, 63, 70, 72-74).  Despite this,

Officers Iannone and Deacetis arrested him for DUI and thereafter fabricated numerous lies on the

arrest affidavit, falsely claiming, among other things, that Plaintiff admitted to having an alcoholic

drink, that he refused a breath test, that officers observed the odor of alcohol on his breath, and

that he had watery, bloodshot, and droopy eyes.  (DE 39 ¶¶ 18-20, 27, 59, 59-74).

An arrest made without a warrant and without probable cause violates the Fourth

Amendment and gives rise to a claim under 42 U.S.C. § 1983.  *Gates v. Khokhar*, 884 F.3d 1290,

1297 (11th Cir. 2018).  Probable cause exists to make an arrest when law enforcement officers

have facts and circumstances within their knowledge "sufficient to warrant a reasonable belief that

a suspect has committed or was committing a crime."  *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th

Cir. 2009).  Probable cause must be measured objectively, based on the totality of the

circumstances.  *Henry v. City of Mt. Dora*, No. 5:13-cv-528, 2014 WL 5823229, at *11 (M.D. Fla.

Nov. 10, 2014).

To overcome qualified immunity in a false arrest case, a plaintiff must do more than merely

show lack of probable cause; a plaintiff must show lack of "arguable probable cause."  *Brown v.

City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).  "Arguable probable cause" exists

where a reasonable officer in the same circumstances and possessing the same knowledge as the

defendant "could have believed" that probable cause existed to make the arrest.  *Von Stein v.

Brescher*, 904 F.2d 572, 579 (11th Cir. 1990).  Courts apply this standard because "it is inevitable

that law enforcement officials will in some cases reasonably but mistakenly conclude that probable

cause is present, and in such cases those officials should not be held personally liable."  *Id.* (cleaned

up); *see also Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) (noting that qualified immunity is broad enough to cover mistaken judgment). Like probable cause, arguable probable cause must be measured objectively, without regard to the officer's subjective intent or belief. *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010).

The Court has reviewed the allegations of Count 1 and finds them sufficient – when construed liberally and accepted as true – to demonstrate an arrest without arguable probable cause. The Court finds most compelling Plaintiff's allegations that Officers Iannone and Deacetis not only made the arrest but also fabricated false information in the arrest affidavit. The Court therefore finds this portion of Count 1 sufficient to overcome qualified immunity and survive dismissal. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1143 (11th Cir. 2007) (reversing entry of summary judgment where officer made warrantless arrest without arguable probable cause).

### 3.   Malicious Prosecution

Count 1 next alleges that Officers Iannone and Deacetis caused Plaintiff's malicious prosecution in violation of his Fourth Amendment rights. (DE 39 ¶¶ 58-74, 75-83). Construing the allegations liberally in Plaintiff's favor, the SAC alleges that state prosecutors relied upon the false statements set forth in Officer Iannone's and Deacetis' arrest affidavit to bring criminal DUI charges against Plaintiff. (DE 39 ¶¶ 75-83). Ultimately, state prosecutors dismissed their DUI case on or about June 1, 2022, thereby terminating the proceeding in Plaintiff's favor. (DE 39 ¶¶ 37-47, 78).

The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). To establish a § 1983 malicious prosecution claim, a plaintiff must

prove two elements: (1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, and (2) that the criminal proceedings against him terminated in his favor. *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) (simplifying the standard for malicious prosecution). To meet the first element, a plaintiff must show that the legal process justifying his seizure was constitutionally infirm and that his seizure would not have been otherwise justified without legal process. *Id.* (citing *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020)).

The Court has reviewed the allegations of Count 1 and finds them sufficient – when construed liberally and accepted as true – to overcome qualified immunity and state a claim for malicious prosecution. As to element (1), Plaintiff alleges he was arraigned on DUI charges on February 16, 2021. (DE 39 ¶ 37, 75). Plaintiff further alleges that, during the arraignment, the state court judge made a probable cause finding, relying exclusively upon the false statements set forth in Officer Iannone's and Deacetis' arrest affidavit. (DE 39 ¶¶ 37, 75, 77, 80, 83).

The Court finds these allegations sufficient to demonstrate a "constitutionally infirm" seizure. *See Williams*, 965 F.3d at 1158 ("A Fourth Amendment violation involving these seizures occurs when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements.") (cleaned up); *Blackshear v. City of Miami Beach*, 799 F. Supp. 2d 1338, 1349 (S.D. Fla. 2011) (denying dismissal of a malicious prosecution claim where false police reports were relied on by the prosecutor, as supplying false information in arrest affidavits violates the Fourth Amendment and can provide the basis for a § 1983 claim).

As to element (2), Count 1 alleges that the state prosecutors dismissed their DUI case against Plaintiff on or after June 1, 2022. (DE 39 ¶¶ 37-47, 78). The Court finds this allegation sufficient to show the criminal proceeding terminated in Plaintiff's favor. *See Luke*, 975 F.3d at 1144 ("A formal end to criminal proceedings is favorable unless it precludes any finding that the plaintiff was innocent of the charges that justified his seizure, which occurs only when the prosecution ends in the plaintiff's conviction on or admission of guilt to each charge that justified his seizure.") (cleaned up). For all of these reasons, the Court finds this portion of Count 1 sufficient to overcome qualified immunity and survive dismissal.

**B.      Counts 2-5 – State Law Claims**

Counts 2-5 allege a series of state law claims. All Defendants urge dismissal based on failure to state a claim upon which relief can be granted. The City and City Manager also raise several immunity-related arguments. The Court will address the immunity issues first.

**1.      Immunity Issues**

The City and City Manager raise three immunity arguments, each of which the Court will address in turn.

**i.      Eleventh Amendment Immunity**

The City and City Manager first urge dismissal of all state law claims against them on Eleventh Amendment immunity grounds. (DE 41 at 6-8, 19). The Court finds this argument misplaced, as "[t]he Eleventh Amendment to the Constitution bars federal courts from entertaining suits against *states*." *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Com'rs*, 405 F.3d 1298, 1302 (11th Cir. 2005) (emphasis added) (finding county sheriff not entitled to Eleventh Amendment immunity as he did not act as an "arm of the state"). The City and City Manager have cited no

authority to support the extension of Eleventh Amendment immunity to *cities and city officials*. Absent such authority, the Court rejects this argument. *See Tippins v. City of Dadeville*, No. 3:13-CV-368-WKW, 2014 WL 1092920, at *3 (M.D. Ala. Mar. 19, 2014) (denying dismissal on Eleventh Amendment immunity argument where defendant failed to cite to authority to extend such immunity to city and city officials).

### ii.    Notice under Fla. Stat. § 768.28

The City and City Manager next urge dismissal of the state law claims against them based on the notice provisions of Florida's sovereign immunity statute, Fla. Stat. § 768.28(6)(a).  (DE 41 at 3-6).  Under that statute, the State of Florida and its political subdivisions agree to a limited waiver of sovereign immunity, but only upon compliance with certain conditions, including notice:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality, county, or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing; ....

Fla. Stat. § 768.28(6)(a); *see also* Fla. Stat. § 768.28(2) (defining "state agencies or subdivisions" to include "counties and municipalities").

"The purpose of the notice requirement … is to give the appropriate public bodies an opportunity to investigate all claims."  *Watts v. City of Hollywood, Florida*, No. 15-61123-CIV, 2015 WL 13567492, at *4 (S.D. Fla. Sept. 4, 2015) (cleaned up).  Notice to the agency and denial of the claim function as "conditions precedent to maintaining an action."  Fla. Stat. § 768.28(6)(b); *see Com. Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1022 (Fla. 1979) (noting that a

plaintiff must comply with this provision as a condition precedent to suing a state agency or political subdivision under Florida law).

In this case, the City and City Manager acknowledge that Plaintiff alleged satisfaction of the statutory notice requirement in paragraph 48 of the SAC.  (DE 41 at 5).  Defendants maintain this paragraph 48 does not go far enough, arguing that a plaintiff must allege, not merely that he provided the statutory notice, but also that the governmental entity responded with a denial of liability.  (DE 41 at 4-5).  Defendants cite no authority to support this proposition.  Absent such authority, the Court finds Plaintiff's allegations sufficient.  *See Ullman v. Florida Dep't of Corr.*, No. 5:17-CV-66-OC-30PRL, 2017 WL 2103392, at *4 (M.D. Fla. May 15, 2017) ("A complaint need not specifically allege compliance with section 768.28(6) to satisfy the pleading requirements."); *Wagatha v. City of Satellite Beach*, 865 So.2d 620, 622 (Fla. 5th DCA 2004) ("A plaintiff must plead compliance with the statute, although a general averment will suffice.").  The Court therefore rejects this argument.[2]

### iii.    Bad Faith & Malicious Purpose

Finally, the City urges dismissal of all state law claims against it based on the exclusion set forth in Fla. Stat. § 768.28(9)(a) for malicious or bad faith conduct of individual governmental employees.  (DE 41 at 17-20).  The statute provides in relevant part:

> An officer, employee, or agent of the state or of any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the

---

[2] To the extent Officers Iannone and Deacetis raise a similar notice argument, the Court rejects this argument as well.  The statutory notice provision does not apply to claims against individual municipal employees.  *See Watts*, 2015 WL 13567492, at *4 ("Subsection 768.28(6)(a), expressly relates only to an action on a claim against the state or one of its agencies or subdivisions, it does not apply to claims against defendant police officers, or City employees, in their individual capacities.") (cleaned up).

scope of her or his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

…

*The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.*

Fla. Stat. § 768.28(9)(a) (emphasis added).

As other courts have noted, the structure of § 768.28(9)(a) contemplates that, "[i]n any given situation[,] either the agency can be held liable under Florida law, or the employee, but not both." *McGhee v. Volusia County*, 679 So. 2d 729, 733 (Fla. 1996). The difference depends upon whether the individual employee acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property" within the meaning of the statute.

Applying the statute here, the City argues it cannot be held liable for any state law claims because the underlying facts set forth in the SAC demonstrate "bad faith" and "malicious purpose" on the part of Officers Iannone and Deacetis. (DE 41 at 19). As such, the City argues, the state law claims should proceed only against Officers Iannone and Deacetis and not against the City.

The Court cannot agree. Pursuant to Fed. R. Civ. P. 8(d), parties may plead alternative and inconsistent claims. Indeed, the structure of § 768.28(9)(a) tends to encourage the pleading of alternative claims in cases of this type. *See Reyes v. City of Miami Beach*, No. 07-22680-CIV, 2007 WL 4199606, *3 (S.D. Fla. Nov. 26, 2007) (noting that § 768.28(9)(a) "tends to cause plaintiffs to bring mutually exclusive claims in the alternative against a government and its

14

employees because the state is immune from acts committed with bad faith or malice, while employees must have acted with bad faith or malice to be held personally liable.") (cleaned up). To be sure, at the end of the day, Florida's sovereign immunity statute will prohibit Plaintiff from simultaneously prevailing on claims against both the City and its employees for the same conduct. At the motion-to-dismiss stage, however, alternative and inconsistent claims may proceed forward. The Motion should be denied as to this argument.

### 2. Failure to State a Claim

Defendants next urge the Court to dismiss Counts 2-5 for failure to state a claim upon which relief can be granted. The Court will address each count in turn.

### i. Count 2 – Malicious Prosecution

Count 2 alleges common law malicious prosecution against Officers Iannone and Deacetis. (DE 39 ¶¶ 75-83). To state a claim for malicious prosecution in Florida, a plaintiff must allege facts that show:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994).

The Court has reviewed the allegations of this count and finds them sufficient to survive dismissal. As to element (1), Plaintiff alleges the state charged him with a DUI. (DE 39 ¶¶ 22, 37, 75). As to element (2), Plaintiff alleges the state based its DUI charges, at least in part, on Officer Iannone's and Deacetis' false arrest affidavit. (DE 39 ¶¶ 75, 77, 80, 83). As to element

(3), Plaintiff alleges the state dismissed the DUI charges on or around June 1, 2022, thereby terminating the proceeding in his favor.  (DE 39 ¶¶ 37-47, 78).

As to element (4), the Court has already concluded, as set forth in part III.A.2 above, that the SAC alleges facts sufficient to show lack of "arguable probable cause."  The Court therefore finds element (4) satisfied.  As to element (5), the Court finds Plaintiff's allegations -- when read liberally and accepted as true – sufficient to show that Officers Iannone and Deacetis acted with malice.  As to element (6), the Court finds that Plaintiff has made sufficient allegations regarding damages, including close to twelve months spent in jail.  (DE 38 ¶¶ 51, 82).   The Motion should therefore be denied as to Count 2.

### ii.    Count 3 – False Arrest

Count 3 alleges common law false arrest against all Defendants.  (DE 39 ¶¶ 84-92).  To state a claim for false arrest in Florida, a plaintiff must allege facts that show:  "(1) an unlawful detention and [deprivation] of liberty against the plaintiff's will; (2) an unreasonable detention which is not warranted by the circumstances and (3) an intentional detention."  *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1409 (S.D. Fla. 2014) (citing *Tracton v. City of Miami Beach*, 616 So.2d 457 (Fla. 3d DCA 1992)).

As to Officers Iannone and Deacetis, the Court has reviewed the allegations of this count and finds them sufficient to survive dismissal.  As other courts have noted, the elements of a Florida common law false arrest claim bear substantial similarity to the elements of § 1983 false arrest claim.  *Lozman*, 39 F. Supp. 3d at 1409.  As set forth in part III.A.2 above, the Court has already concluded that Plaintiff states a viable § 1983 false arrest claim.  The Court therefore

reaches the same conclusion as to the Florida common law false arrest claim, at least as to Officers Iannone and Deacetis.

As to the City, the Court interprets Plaintiff's claim as an attempt to proceed under the theory of respondeat superior.  In other words, by naming the City as a defendant in Count 2, Plaintiff seeks to hold the City vicariously liable for the conduct of its employees, Officers Iannone and Deacetis, in committing the tort of false arrest.  (DE 39 ¶ 92).  As previously explained in part III.B.1.iii above, at the end of the day, Florida's sovereign immunity statute will not permit Plaintiff to simultaneously prevail against both the City and its employees for the same conduct alleged in this count.  Nevertheless, at the motion-to-dismiss stage, the Court will allow Count 3 to proceed against the City on a respondeat superior theory.

As to the City Manager, the Court reaches a different conclusion.  At times, the SAC seems to allege Count 3 against the City Manager *in his official capacity* (DE 39 ¶ 92), while at other times, it seems to allege Count 3 against the City Manager *in his individual capacity* (DE 39 ¶ 6).  To the extent Plaintiff seeks to bring an official capacity claim, the Court dismisses it as superfluous.  Given that Plaintiff has already sued the City itself, it would be redundant to add a claim against the City Manager in his official capacity since that would be the functional equivalent of suing the City.  *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly….").

To the extent Plaintiff seeks to bring an individual capacity claim against the City Manager, the Court dismisses it for failure to state a claim upon which relief can be granted.  The SAC fails

to include specific, plausible facts linking the City Manager to the false arrest alleged in Count 3. Absent such facts, an individual capacity claim cannot proceed.  In sum, then, Count 3 should be dismissed as to the City Manager, regardless of whether such claim attempts to proceed in official or individual capacity.

### iii.     Count 4 – False Imprisonment

Count 4 alleges common law false imprisonment against the City and City Manager.  (DE 39 ¶¶ 93-97).  To state a claim for false imprisonment in Florida, a plaintiff must allege facts that show:  "(1) the unlawful detention and deprivation of liberty of a person; (2) against that person's will; (3) without legal authority or color of authority; and (4) which is unreasonable and unwarranted under the circumstances."  *Bartley v. Kim's Enter. of Orlando, Inc*., 568 F. App'x 827, 834 (11th Cir. 2014) (cleaned up) (quoting *Mathis v. Coats*, 24 So.3d 1284, 1289 (Fla. 2d DCA 2010)).

As to the City, the Court has reviewed the allegations of this count and finds them sufficient to survive dismissal.  As the Eleventh Circuit has noted, in Florida, the torts of false arrest and false imprisonment are "largely synonymous."  *Bartley*, 568 F. App'x at 833–34; *see also Rankin v. Evans*, 133 F.3d 1425, 1431 n.5 (11th Cir. 1998) ("Although Count II alleges both false arrest and false imprisonment, we refer to the claim as one for false arrest because under Florida law false arrest and false imprisonment are different labels for the same cause of action.") (cleaned up).  As set forth in part III.B.2.ii above, the Court has already allowed a respondeat superior claim to proceed against the City for false arrest.  The Court reaches the same conclusion as to the Count 4 claim for false imprisonment.

As to the City Manager, the Court reaches the same conclusions set forth in part III.B.2.ii above. To the extent Plaintiff seeks to press an official capacity claim, the Court dismisses it as superfluous and redundant to the claim already alleged against the City. *See Busby*, 931 F.2d at 776. To the extent Plaintiff seeks to press an individual capacity claim, the Court dismisses it for failure to state a claim upon which relief can be granted. The SAC fails to include specific, plausible facts linking the City Manager to the false imprisonment alleged in Count 4.

### iv.     Count 5 – Intentional Infliction of Emotional Distress

Count 5 alleges common law intentional infliction of emotional distress ("IIED") against Officers Iannone and Deacetis. (DE 39 ¶¶ 98-99). To state a claim for IIED in Florida, a plaintiff must allege facts that show "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Moore v. Pederson*, 806 F.3d 1036, 1053–54 (11th Cir. 2015). "While there is no exhaustive or concrete list of what constitutes 'outrageous conduct,' Florida common law has evolved an extremely high standard." *Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1332 (S.D. Fla. 2018) (cleaned up). "[E]ven tortious or criminal intent, or intent to inflict emotional distress, standing alone, is not enough." *Moore*, 806 F.3d at 1053 (cleaned up). "Courts uphold claims of intentional infliction of emotional distress only in extremely rare circumstances." *Casado*, 340 F. Supp. 3d at 1332 (cleaned up).

The Court has reviewed the allegations of this count and finds them sufficient to survive dismissal. The SAC alleges that Officers Iannone and Deacetis falsely arrested Plaintiff and fabricated a false arrest affidavit that caused his criminal prosecution for a crime he did not

commit.  (DE 39 ¶¶ 17-20, 27, 33-34, 84-89, 98-99).  This conduct falls within the scope of conduct the Eleventh Circuit has previously found to support an IIED claim.  *See Tillman v. Orange Cnty., Fla.*, 519 F. App'x 632, 637 (11th Cir. 2013) ("Because this allegation—that police officers falsified charging documents in order to convict a man of a nonexistent crime—is the type of extreme conduct considered to be intolerable in a civilized society, we remand this claim for reconsideration.").  The Motion should therefore be denied as to Count 5.

## IV.  <u>RECOMMENDATION & NOTICE OF RIGHT TO OBJECT</u>

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that the Motion (DE 41) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1.   As to Count 1, the Motion should be **GRANTED** to the extent this count alleges a constitutional violation based upon police officers approaching Plaintiff's parked vehicle on the roadway, but the Motion should be **DENIED** as to the remainder of Count 1.

2.   As to Count 2, the Motion should be **DENIED.**

3.   As to Count 3, the Motion should be **DENIED.**

4.   As to Count 4, the Motion should be **GRANTED** as to the City Manager but **DENIED** in all other respects.

5.   As to Count 5, the Motion should be **GRANTED** as to the City Manager but **DENIED** in all other respects.

6.   In light of the recommendation that the Motion be granted as to both counts against the City Manager, the City Manager should be **DISMISSED** from this case.

7.     Plaintiff should be given no further opportunities to amend his pleadings as he has had multiple opportunities to do so in the past.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 28th day of June 2024.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE


cc: counsel of record; Plaintiff, *pro se*.